UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In Re:<br><br>       Troy Saunby,<br><br>          Debtor. | Chapter 13<br><br>Case No. 16-49781<br><br>Honorable Maria L. Oxholm |
| PolyOne Corporation,<br><br>         Plaintiff,<br><br>vs.<br><br>Troy Saunby,<br><br>         Defendant. | Adversary Proceeding No. 16-_____ |

## POLYONE CORPORATION'S COMPLAINT TO DETERMINE DEBT NONDISCHARGEABLE UNDER 11 U.S.C. § 523(A)(2)

Plaintiff PolyOne Corporation ("PolyOne"), by and through its undersigned attorneys alleges as follows for its complaint:

## JURISDICTION

1.     This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1334 and 157.

2.     Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

3.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), arising under title 11 of the United States Code, and arising in the above-captioned case under chapter 13 of the Bankruptcy Code, now pending in this Court.

4.     PolyOne consents to entry of a final order or judgment by this Court.

- 2 -

## GENERAL ALLEGATIONS

5.    On July 8, 2016 (the "Petition Date"), Debtor Troy Saunby ("Debtor" or "Saunby") filed his bankruptcy petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan.

6.    Saunby is an individual and a resident of Michigan.

7.    PolyOne Corporation ("PolyOne") is an Ohio Corporation with its principal place of business located at 33587 Walker Road, Avon Lake, OH 44012.

### Saunby's Debt to Polyone

8.    On August 11, 2015, and on November 11, 2015, judgments (referred to collectively here as the "Judgment") were entered in favor of PolyOne and against Debtor, in the Court of Common Pleas, Cuyahoga County, Ohio, case number CV-14-831892, in the amount of $189,549.04, plus interest and court costs, based on a complaint (the "State Court Complaint") filed by PolyOne against Debtor.    A copy of the Judgment is attached hereto as **Exhibit A**, and is incorporated by reference.

9.    With costs and statutory interest, the outstanding amount of the Judgment was $194,058.17 as of the Petition Date.    PolyOne filed proof of claim number 8 to evidence this.

28033066.7\153830-00002

## Saunby's Employment and Agreements with PolyOne

10.      PolyOne is a leading international provider of specialized polymer materials, services and solutions.

11.      PolyOne hired Saunby in May of 2002 as a Sales Representative.

12.      Over the course of his employment with PolyOne, Saunby was promoted several times and had attained a managerial position. See State Court Complaint, ¶ 10, **Exhibit B**.

13.      On or about June 8, 2007, Saunby executed an employee agreement required by PolyOne (the "2007 Agreement"). The 2007 Agreement is attached to the State Court Complaint as Exhibit B.

14.      In September of 2013 Saunby stated to PolyOne that he had been offered other employment.

15.      Because PolyOne wanted Saunby to remain in his position, PolyOne increased his salary and gave him a lump sum bonus of $10,000 ("Bonus"). See State Court Complaint, ¶ 12.

16.      On September 20, 2013, Saunby executed a Repayment Agreement.

17.      The Repayment Agreement provided that Saunby would reimburse PolyOne 100% of the Bonus if he were to resign his position at PolyOne within 12 months of signing the Repayment Agreement. See State Court Complaint, ¶ 13 and Repayment Agreement attached as Exhibit C to State Court Complaint.

28033066.7\153830-00002

18.     Also on September 20, 2013, Saunby executed a Revised Employee Agreement ("Employee Agreement"), which is attached to the State Court Complaint as Exhibit A.

19.     Under the Employee Agreement, Saunby agreed not to compete against PolyOne while employed by PolyOne. See Employee Agreement, ¶ 4.

20.     Under the Employee Agreement, Saunby agreed to a post-employment non-competition covenant, pursuant to which he agreed not to compete with PolyOne for a period of one year after termination of his employment. See Employee Agreement, ¶ 5.

21.     The Employee Agreement provides among other things, that:

> I [Saunby] am prohibited from being employed by or entering into or engaging in any business which competes with PolyOne's business within the Restricted Territory as applicable to me as defined above;
>
> I [Saunby] am prohibited from soliciting customers, business, orders for, or selling any products or services in competition with, or for any business that competes with, the business of PolyOne;
>
> I [Saunby] am prohibited from diverting, enticing, or taking away any customers, business, orders, or sales of PolyOne or attempting to do so; and/or
>
> I [Saunby] am prohibited from promoting or assisting, financially or otherwise, any person, firm association, partnership, corporation or other entity engaged in business which competes with the business of PolyOne.

*See* Employee Agreement, Exhibit A to State Court Complaint, ¶ 4.

28033066.7\153830-00002

22. The Employee Agreement further provided that Saunby would protect all of PolyOne's confidential and trade secret information with which he was entrusted (Employee Agreement, at ¶ 11) and that he would "return in good condition all PolyOne property and Confidential Information." *Id.* at ¶ 12.

23. Saunby's position as a Sales Manager for PolyOne granted him access to confidential and trade secret information, customer lists and contacts and PolyOne's strategic plans.

24. Within his role, Saunby was aware of PolyOne's pricing and margin information, all of which is highly confidential. See State Court Complaint, ¶ 18.

**Saunby's Covert Employment with LG and Later Resignation from PolyOne**

25. On or about May 30, 2014, Saunby accepted employment with LG, a competitor of PolyOne, while he was still employed by PolyOne. A copy of the offer letter from LG is attached to the State Court Complaint as Exhibit D.

26. On or about June 9, 2014, Saunby began working for LG Chem America, Inc. ("LG").

27. Upon information and belief, Saunby worked for LG until about October 2, 2014, at which time LG terminated his employment.

28. Saunby did not inform PolyOne of his employment by LG and prior to the issuance of a temporary restraining order on August 27, 2014, Saunby called on

customers and potential customers on behalf of LG while still employed by, and accepting a salary from, PolyOne. *See* State Court Complaint, ¶¶ 19-20.

29.     Saunby's employment with LG and solicitation of customers on its behalf violated his non-competition agreement made with PolyOne.

30.     Saunby submitted his resignation to PolyOne on August 1, 2014, which was to become effective August 15, 2014.

31.     After submitting his resignation, Saunby told PolyOne employees and PolyOne's Senior Human Resources Manager that he would work for Imerys S.A., a company that is not a competitor of PolyOne.  See State Court Complaint, ¶ 21.

### COUNT I – Money obtained by false pretenses or actual fraud
### (Bankruptcy Code Section § 523(a)(2))

32.     Saunby's employment at a direct competitor, notwithstanding his having executed the Employee Agreement and his concurrent employment by PolyOne, renders him a "faithless servant."

33.     As explained in *In re R&D Eng'g, LLC*, 546 B.R. 738, 779-83 (Bankr. E.D. Mich. 2016), accepting payment from an employer, while simultaneously working for a competitor, violates the employee's duties as agent to the employer and thus constitutes fraud.

34.     Compensation received from the employer while acting as a faithless servant becomes a nondischargeable debt under 11 U.S.C. § 523(a)(2).  *R&D Eng'g, LLC*, 546 B.R. at 779-83.

28033066.7\153830-00002

35.    Further, the Supreme Court recently interpreted "actual fraud" under 11 U.S.C. § 523(a)(2)(A) to encompass any kind of actual fraud, even when the fraud does not involve a false representation. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581, 1590 (2016).

36.    All liability arising from the fraud, including attorneys' fees and other damages PolyOne has suffered, are exempted from discharge. *Cohen v. de la Cruz*, 523 U.S. 213 (1998).

37.    The Judgment was entered on the basis that Saunby was a "faithless servant" to PolyOne.

Wherefore, PolyOne respectfully asks the Court to deny Debtor a discharge of the debt owed to PolyOne in the amount of $194,058.17, plus all allowable interest, costs, and attorneys' fees, and grant such further relief as may be just.

## COUNT II – Willful and malicious injury
## (Bankruptcy Code Section § 523(a)(6))

38.    The Sixth Circuit standard for a finding of nondischargeability under 11 U.S.C. § 523(a)(6) has been clarified in recent years.

> For the discharge exception under § 523(a)(6) to apply, a debtor must: (1) "will or desire harm[;]" or (2) "believe injury is substantially certain to occur as a result of his behavior." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n.10 (6th Cir. 1999). The Supreme Court has said that "nondischargeability [under this subsection] takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). This

- 8 -

court has created a non-exclusive list of the "types of misconduct [that] satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." *Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 5 & n.2 (6th Cir. 2004) (collecting cases). "[T]he injury must invade the creditor's legal rights . . . 'in the technical sense, not simply harm to a person.'"

*Musili v. Droomers (In re Musili)*, 379 Fed. Appx. 494, 498 (6th Cir. 2010).

39. The State Court Complaint discusses in detail PolyOne's determination that Saunby stole company confidential and trade secret information in order to use them for his own benefit, LG's benefit, or both.

40. Through an investigation of Saunby's email account, PolyOne found that Saunby had forwarded many PolyOne business-related emails to his personal email address.

41. The emails Saunby forwarded contained customer contact information, sales quotes, pricing information and requests for quotes from customers. Some of the emails also indicate Saunby's intent to violate his non-competition agreement. See State Court Complaint, ¶¶ 24-27.

42. A forensic analysis of the computer assigned to Saunby by PolyOne revealed that he had inserted a USB flash drive into his computer three times in the ten days prior to his departure from the company.

28033066.7\153830-00002

43.    In his exit interview questionnaire, Saunby wrote "N/A" when answering a question as to whether he had any flash drives or thumb drives to be returned to PolyOne.

44.    Saunby resigned his position at PolyOne less than one year after executing the Repayment Agreement which required him to repay the Bonus within 30 days of the end of his employment with PolyOne.

45.    Saunby has repaid none of the Bonus amount to PolyOne.

46.    Saunby's theft and use of confidential and trade secret information for his own benefit and the benefit of a PolyOne competitor, his deliberate violation of the non-competition agreement he had entered into with PolyOne, and his refusal to repay the Bonus as he had agreed constitutes injury to PolyOne.

47.    Saunby's willful and knowing competition with PolyOne while employed by PolyOne constitutes injury to PolyOne.

48.    Saunby had to know that PolyOne was substantially certain to be injured by his behavior.

49.    Therefore, the amount of the Judgment against Debtor and in favor of PolyOne is a nondischargeable debt under 11 U.S.C. § 523(a)(6).

50.    All liability arising from the injury, including attorneys' fees and other damages Polyone has suffered, are exempted from discharge. *See Cohen v. de la Cruz*, 523 U.S. 213 (1998).

- 10 -

Wherefore, PolyOne respectfully ask the Court to deny Debtor a discharge of the debt owed to PolyOne in the amount of $194,058.17, plus all allowable interest, costs and attorneys' fees, and grant such further relief as may be just.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Ronald A. Spinner
    Marc N. Swanson (P71149)
    Ronald A. Spinner (P73198)
    Todd A. Holleman (P57699)
    Attorneys for PolyOne Corporation
    150 West Jefferson, Suite 2500
    Detroit, MI 48226
    (313) 496-7929
    spinner@millercanfield.com

Dated: January 5, 2017

**COMPLAINT EXHIBIT A**

**THE JUDGMENT**

28033066.7\153830-00002



91684756

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

POLYONE CORPORATION
   Plaintiff

Case No: CV-14-831892

Judge: JOHN P O'DONNELL

TROY SAUNBY
   Defendant

## JOURNAL ENTRY

A BENCH TRIAL ON THE REMAINING CLAIMS OF THE PLAINTIFF WAS HELD ON OCTOBER 15, 2015. BASED UPON THE EVIDENCE AT THAT TRIAL, JUDGMENT IS HEREBY ENTERED IN FAVOR OF THE PLAINTIFF POLYONE CORPORATION AND AGAINST THE DEFENDANT TROY SAUNBY IN THE TOTAL AMOUNT OF $179,549.04, WITH INTEREST AT THE STATUTORY RATE, PLUS COURT COSTS.

THE PLAINTIFF'S REQUEST FOR A PERMANENT INJUNCTION IS DENIED.

COURT COST ASSESSED TO THE DEFENDANT(S).
PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER PRESCRIBED BY CIV.R. 5(B). THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE.

_____
Judge Signature           11/11/2015

11/11/2015

RECEIVED FOR FILING
11/11/2015 14:25:28
NAILAH K. BYRD, CLERK

# COMPLAINT EXHIBIT B

# THE STATE COURT COMPLAINT

28033066.7\153830-00002



### ANDREA F. ROCCO
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**COMPLAINT** Electronically Filed:
November 4, 2014 13:10

By: MATTHEW RIDINGS 0079402

Confirmation Nbr. 275789

POLYONE CORPORATION

vrs.

TROY SAUNBY

CV 14 831892

**Judge:**

JOHN P. O'DONNELL

Pages Filed: 43

**COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| **POLYONE CORPORATION,** ) | |
| ) | |
| ) | CASE NO. CV-14-831892 |
| Plaintiff, ) | |
| ) | JUDGE JOHN P. O'DONNELL |
| vs. ) | |
| ) | |
| **TROY SAUNBY,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |
| ) | |

### FIRST AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DAMAGES

Plaintiff PolyOne Corporation ("PolyOne") brings this action against Troy Saunby ("Saunby") and alleges as follows:

### THE PARTIES

1.     Plaintiff PolyOne is an Ohio corporation with its principal place of business at 33587 Walker Road, Avon Lake, OH 44012.

2.     Defendant Saunby, upon information and belief, is a citizen of the State of Michigan and is a resident of Macomb County. He was formerly employed by PolyOne as a North American Automotive Manager in its PolyOne Distribution business.

### JURISDICTION AND VENUE

3.     The Court has personal jurisdiction over Mr. Saunby, and venue is proper in this Court, because paragraph 25 of the parties' Employee Agreement, a true and correct copy of

which is attached hereto as Exhibit A, provides that "the state and federal courts located in Cleveland, Ohio shall have exclusive jurisdiction in any action arising out of this Agreement. PolyOne and I submit to the personal jurisdiction of such courts, consent to service of process, and waive any other requirements regarding personal jurisdiction, venue, or service of process."

4.  The Court has subject matter jurisdiction pursuant to Ohio Rev. Code § 2305.01.

## FACTUAL BACKGROUND

### *PolyOne Distribution's Business*

5.  PolyOne is a leading provider of specialized polymer materials, services and solutions. Its polymer products include but are not limited to plastic compounds, colorants, thermoplastic elastomers, specialty vinyl resins, and specialty additives. PolyOne has operations in North America, South America, Europe and Asia.

6.  PolyOne has many different business units, including PolyOne Distribution. PolyOne Distribution is a leading supplier of commodity and engineering thermoplastic resins that are manufactured by many major chemical companies. PolyOne Distribution provides over 3,500 products to more than 5,000 customers in North America.

7.  PolyOne Distribution serves many types of industry, including appliance, construction, consumer, electronics and health care, and transportation—including automotive. The resins sold by PolyOne are used in automobiles' electrical and wiring systems, interior surfaces and other parts, and help reduce weight by replacing heavier materials. One type of resin sold by PolyOne, for instance, is an ABS resin, which is used in automotive interiors and parts, such as door handles, hub caps, or radiator grills.

8.  Because PolyOne Distribution is a distributor of other manufacturers' products, the market for the sale of these resins is highly competitive. PolyOne competes both with other

2

distributors and directly with other manufacturers who may attempt to sell their product direct to consumers. Because PolyOne Distribution is not itself a manufacturer, but only a distributor, one of its most valuable assets is its customer lists, goodwill, and relationship with its customers.

9.       One manufacturer of thermoplastic resins is LG Chem, Ltd. ("LG"), a South Korea-based chemical company. LG is a competitor of PolyOne Distribution. Upon information and belief, LG is the largest chemical company in South Korea, and it has operations world-wide, including employees in Michigan, where it targets major automobile manufacturers.

### *PolyOne's Employment of Troy Saunby*

10.      Mr. Saunby was hired by PolyOne on May 6, 2002. Mr. Saunby worked out of his home in Chesterfield, Michigan, working for PolyOne Distribution. Mr. Saunby was primarily focused on automotive sales, but also sold products outside of the automobile industry. Over the course of his employment with PolyOne, Mr. Saunby was promoted numerous times and held various positions within the company, including Sales Representative, Senior Sales Representative, Account Manager, District Manager, District Sales Manager, and North American Automotive Manager for PolyOne Distribution. At the time of his resignation, Mr. Saunby's territory included Michigan, parts of Indiana, parts of Canada, Northern Illinois, and parts of Ohio.

11.      In or around 2007, PolyOne began requiring certain employees to sign employee agreements. On or around June 8, 2007, Mr. Saunby executed an Employee Agreement (the "2007 Agreement" attached as Exhibit B hereto).

12.      In September 2013, Mr. Saunby approached PolyOne and stated that he had received calls about other offers of employment. In an effort to retain Mr. Saunby, PolyOne

3

increased Mr. Saunby's base salary and gave him a lump sum payment of $10,000.00 (the "Bonus").

13.     On September 20, 2013, Mr. Saunby executed a Repayment Agreement. The Repayment Agreement provides that if Mr. Saunby resigned his position at PolyOne within 12 months of signing the Repayment Agreement, he would reimburse PolyOne 100% of the Bonus. A true and correct copy of the Repayment Agreement is attached hereto as Exhibit C.

14.     In further consideration of the salary increase and Bonus, Mr. Saunby, on September 20, 2013, executed a revised Employee Agreement (the "Agreement"), attached hereto as Exhibit A. Under the Agreement, Mr. Saunby agreed to a post-employment non-competition covenant, pursuant to which he agreed not to compete with PolyOne for a period of one year after the termination of his employment. Specifically, the Agreement provides, among other things, that:

> I [Mr. Saunby] am prohibited from being employed by or entering into or engaging in any business which competes with PolyOne's business within the Restricted Territory applicable to me as defined above;
>
> I [Mr. Saunby] am prohibited from soliciting customers, business, orders for, or selling any products or services in competition with, or for any business that competes with, the business of PolyOne;
>
> I [Mr. Saunby] am prohibited from diverting, enticing, or taking away any customers, business, orders, or sales of PolyOne or attempting to do so; and/or
>
> I [Mr. Saunby] am prohibited from promoting or assisting, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in any business which competes with the business of PolyOne.

(Agreement, at Attachment A, ¶ 2.)

15.     The Restricted Territory is defined according to an employee's job duties. There are four categories of Restricted Territory, and an employee may fall into one or more of these

4

categories. Because Mr. Saunby had sales and sales management responsibilities, the Agreement

provides that the Restricted Territory is:

> the geographic area(s) within a fifty (50) mile radius of any PolyOne facilities or
> location(s) in, to, or for which I worked (including a home office), as well as the
> geographic area(s) or territory to which I was assigned or had any responsibility (either
> direct or supervisory) at the time of my employment termination and at any time during
> the two (2) years preceding my termination and a fifty (50) mile radius around those
> areas/territories; and . . . all of the specific customer accounts . . . with which I had any
> contact or for which I had any responsibility (either direct or supervisory) at the time of
> my employment termination and at any time during the two (2) years preceding my
> termination.." (*Id.* at Attachment A, ¶1(a).)

16.     The Agreement further provided that Mr. Saunby would protect all of PolyOne's

confidential and trade secret information with which he was entrusted (Agreement, at ¶ 11) and

that he would "return in good condition all PolyOne property and Confidential Information."

(*Id.* at ¶ 12.)

17.     Additionally, PolyOne's Code of Conduct, which is provided to all employees,

emphasizes the critical importance of maintaining the company's confidential and proprietary

information:

> Our competitive edge can be easily diminished if others gain access to PolyOne's
> proprietary information, innovative ideas or intellectual property and use it to
> develop competing products or to gain positions with our customers. These are
> intangible assets that must be appropriately managed and protected. Examples
> include information pertaining to product and process technology, competitive
> position, directional strategy, customers, product costs, commercial information
> and trade secrets. . . .
>
> For PolyOne to grow and succeed, this proprietary and sensitive information must
> be kept confidential and protected. Therefore, as a PolyOne director or employee,
> you have a personal stake and responsibility to ensure that valuable company
> information is not disclosed to others.

18.     As a Sales Manager for PolyOne, Mr. Saunby was given access to PolyOne

confidential and trade secret information, including customer lists and customer contacts, as well

as PolyOne's strategic plans, the identity of key customers for PolyOne, and key targets that

5

PolyOne was pursuing. Moreover, within his role, Mr. Saunby was aware of PolyOne's pricing and margin information, all of which is highly confidential and trade secret information.

### *Mr. Saunby's Covert Employment with LG and Ultimate Resignation from PolyOne*

19.     Unbeknownst to PolyOne, Saunby, on or about May 30, 2014—while still employed with PolyOne—accepted employment with LG, a competitor of PolyOne, particularly in the sale of ABS resin. Mr. Saunby began employment with LG on or about June 9, 2014. A copy of Mr. Saunby's signed offer letter from LG is attached hereto as Exhibit D.

20.     Upon information and belief, Mr. Saunby worked for LG continuously beginning on or about June 9, 2014, until on or about October 2, 2014, when LG terminated Mr. Saunby's employment. Prior to August 27, 2014, when the Court issued its temporary restraining order, Mr. Saunby called on customers and potential customers on behalf of LG, including while employed by, and accepting salary from, PolyOne. Mr. Saunby did not disclose to PolyOne that he was working for LG during this time and, upon information and belief, Mr. Saunby did not disclose to LG that he remained employed by PolyOne.

21.     On Friday, August 1, 2014, Mr. Saunby submitted his resignation to PolyOne, which was to be effective August 15, 2014. After submitting his resignation, he told numerous PolyOne employees that he was going to work for Imerys S.A., a French company that is not a competitor of PolyOne. Likewise, in his exit interview, Mr. Saunby, in response to a question of whether he was accepting employment at a competitor, wrote "None." At one point, PolyOne's Senior Human Resources Manager sent Mr. Saunby a text message, which asked "What is the name of your new co [sic] again?" Mr. Saunby replied: "Imerys." (*See* Text Message from Ms. Marin to Mr. Saunby, attached hereto as Exhibit E.)

6

22.     Following Mr. Saunby's resignation from PolyOne on August 15, 2014, Mr.
Saunby doubled down on his efforts to obtain PolyOne's customers on behalf of LG. Mr.
Saunby emailed a number of PolyOne customers and potential customers and attempted to solicit
business for LG. In many cases, Mr. Saunby acknowledged in these emails that he had met these
customers while working for PolyOne. Notwithstanding Mr. Saunby's non-competition
agreement, he deliberately targeted his former customers and contacts that he met while working
for PolyOne.

23.     After PolyOne filed its original Complaint in this litigation, LG terminated Mr.
Saunby's employment on or about October 2, 2014.

### Saunby's Theft of PolyOne's Confidential Information and Irreparable Harm to PolyOne

24.     A review of Mr. Saunby's PolyOne email revealed that during May 2013, Mr.
Saunby was scheduled to interview at LG for the position of Automotive Plastic Resin
Sales/Business Development, a position that would be very similar to Mr. Saunby's duties at
PolyOne. When LG scheduled the interview, its Human Resources representative wrote to Mr.
Saunby that "[w]e did share your list of contacts in the automotive industry with Mr. Cho
(Director), but he does not have a copy of the list. If you can, please just bring the list as a
supplemental material when discussing what you can bring to the role." (See Email from Ms.
Bae to Mr. Saunby, attached hereto as Exhibit F).

25.     Following Mr. Saunby's resignation from PolyOne, it conducted an examination
of Mr. Saunby's email account. PolyOne discovered that after Mr. Saunby provided his notice of
resignation on August 1, he forwarded many PolyOne business-related emails to his home email
address. These emails included customer contact information, sales quotes, pricing information,
and requests for quotes from customers. Mr. Saunby had no legitimate reason to forward these

7

emails to his personal email address. Upon information and belief, he forwarded these emails so that he could use PolyOne's confidential and trade secret information for the benefit of his new employer, LG. During his exit interview, Mr. Saunby stated that he did not have any PolyOne confidential information in his possession and that he returned all company property to PolyOne. (A copy of the exit interview questionnaire is attached hereto as Exhibit G).

26. Some of these emails make explicit Mr. Saunby's intent to violate his non-competition agreement. In one email that he forwarded, a PolyOne customer asked Mr. Saunby for a quote on a product that PolyOne carried. Mr. Saunby provided the quote, and also told the customer that he was resigning from PolyOne effective August 15. After the customer wished Mr. Saunby luck in his new position, Mr. Saunby replied—on August 5, 2014, while he was still employed with PolyOne—that "I will come visit you when I start with my new company☺ [sic] Save you some money!!" A copy of this email, redacted to remove the customer name, is attached hereto as Exhibit H.

27. In another email, an employee of a PolyOne customer sent an email to Mr. Saunby in which she wrote that she was leaving the company. On August 4, Mr. Saunby replied "Congrats on your new position. I'm leaving PolyOne as well—who could I reach out to at [customer] to talk about ABS & PC/ABS opportunities? I'm going to work for a direct supplier. My new email address will be troysaunby@lgchem.com." A copy of this email, redacted to remove the customer name, is attached hereto as Exhibit I.

28. Following Mr. Saunby's resignation, PolyOne conducted a forensic analysis of the PolyOne computer assigned to Mr. Saunby. The analysis of the computer revealed that on August 3, 2014, Mr. Saunby inserted a USB flash drive into the computer, and inserted two more devices into the computer on August 13, 2014—just two days before his last working day at

8

PolyOne. Prior to August 1, the date on which he announced his resignation, Mr. Saunby had only inserted flash drives into his computer three other times in 2014[1] one time each in March, April, and June. After he gave notice of his resignation, in a period of ten days, Mr. Saunby inserted three flash drives. In its exit interview questionnaire, PolyOne explicitly asks whether the employee has any flash drives or thumb drives to be returned. In response to this question, Mr. Saunby wrote "N/A." (*See* Ex. G.)

29.     Furthermore, the examination of Mr. Saunby's PolyOne-issued computer revealed that he had used the computer in violation of PolyOne's policies and terms of use.

30.     Without the intervention of this Court requiring Mr. Saunby to honor his contractual, statutory, and common law duties, PolyOne will suffer irreparable harm by the loss of its customers, goodwill, and disclosure of its confidential and trade secret information.

### Count I – Breach of Contract (Employee Agreement)

31.     PolyOne incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

32.     Mr. Saunby voluntarily acknowledged and agreed to the terms of the Agreement, which is a valid, enforceable contract.

33.     Pursuant to Paragraph 5 of the Agreement, Mr. Saunby covenanted and agreed that he would not engage in certain prohibited activities following the termination of his employment, including, among other things, being employed by or entering into or engaging in any business which competes with PolyOne's business.

34.     Pursuant to Paragraph 4 of the Agreement, Mr. Saunby covenanted and agreed that he would not, during the course of employment with PolyOne, compete with PolyOne

---

[1] Mr. Saunby had a new operating system installed on March 5, 2014, so PolyOne does not have records of this activity prior to March 2014.

9

anywhere in the world. Specifically, Mr. Saunby is prohibited from: (a) being employed or engaging in a business that competes with PolyOne; (b) soliciting customers or selling products or services in competition with PolyOne; (c) diverting customers or sales from PolyOne; or (d) promoting or assisting any company that competes with PolyOne.

35. Mr. Saunby commenced employment with LG beginning on or about June 9, 2014, while he was still employed by PolyOne. LG is directly competitive with PolyOne, particularly PolyOne Distribution's Automotive business, the business in which Mr. Saunby was employed.

36. By accepting employment with LG, a competitor of PolyOne, Mr. Saunby breached the terms of his Employee Agreement, specifically including Paragraph 4 of the Agreement, which prohibits competing with PolyOne while employed by PolyOne. Mr. Saunby has further breached the Paragraph 5 of the Agreement by continuing employment with LG following the termination of his employment with PolyOne.

37. Pursuant to Paragraph 11 of the Agreement, Mr. Saunby covenanted and agreed, among other things, that he would keep secret all confidential information learned or disclosed to him during the course of his employment with PolyOne.

38. Mr. Saunby, in violation of his Employee Agreement, has used, misappropriated, or otherwise disclosed confidential, proprietary, and trade secret information for his own benefit and/or for the benefit of LG, all to the detriment of PolyOne.

39. Mr. Saunby used his PolyOne-issued computer in a manner that violated the terms upon which he was provided the computer, and violated PolyOne's terms of use.

40. The conduct described above constitutes separate and distinct breaches of the Agreement.

10

41.    As a result of Mr. Saunby's breach of the Agreement, PolyOne has suffered damages in an amount to be proven at trial.

### Count II – Breach of Contract (Repayment Agreement)

42.    PolyOne incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

43.    Mr. Saunby voluntarily acknowledged and agreed to the terms of the Repayment Agreement, which is a valid, enforceable contract.

44.    PolyOne paid Mr. Saunby the Bonus in accordance with the terms of the Repayment Agreement.

45.    Mr. Saunby resigned his position with PolyOne on August 15, 2014, less than a year after signing the Repayment Agreement.

46.    Under the terms of the Repayment Agreement, Mr. Saunby was to repay the Bonus to PolyOne within 30 days of the end of his employment with PolyOne.

47.    Mr. Saunby has not repaid the Bonus to PolyOne, and is therefore in breach of the Repayment Agreement.

48.    As a result of Mr. Saunby's breach, PolyOne has suffered damages in the amount of $10,000.

### Count III -Misappropriation of Trade Secrets

49.    PolyOne incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

50.    PolyOne's trade secret information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and it has

11

been and is the subject of efforts by PolyOne that are reasonable under the circumstances to maintain its secrecy. For example, PolyOne restricts access to and disclosure of its confidential, proprietary and trade secret information by, among other things, physically securing its facilities and documents, password protecting electronic documents and databases, employing confidentiality agreements and numerous other measures to protect the secrecy of its information. PolyOne also communicates its expectations regarding use and disclosure of confidential information to its employees through the PolyOne Code of Conduct.

51. Through his position at PolyOne, Mr. Saunby had access to PolyOne's trade secret information regarding customer identities, customer contacts, pricing, margins, customer targets, and strategic plans for competition, all of which is highly confidential trade secret information. PolyOne intended that Mr. Saunby use this information for PolyOne's benefit.

52. LG is a significant competitor of PolyOne, particularly in the Automotive industry. Mr. Saunby's employment as a salesman with LG would permit him to utilize confidential and proprietary trade secret information belonging to PolyOne for the direct benefit of one of PolyOne's direct competitors. Indeed, while still employed with PolyOne, Mr. Saunby had already begun to solicit PolyOne customers for his own benefit, the benefit of LG, and to the detriment of PolyOne.

53. Following his resignation from PolyOne, Mr. Saunby, by emailing PolyOne trade secret information to his personal email address, has misappropriated PolyOne's trade secret information, and, upon information and belief, has done so for the purpose of benefitting himself and LG, all to the detriment of PolyOne.

54. During the time that he was still employed with PolyOne, Mr. Saunby accepted employment with LG in a position that contains substantially similar job duties to those which he

12

at that time held at PolyOne. During his employment with LG, Mr. Saunby utilized and relied upon confidential information belonging to PolyOne, that he learned while employed with PolyOne, for the benefit of LG. Specifically, Mr. Saunby used and disclosed PolyOne customer information and customer contacts during the course of his employment with LG, and prior to his termination by LG.

55. As a result of Mr. Saunby's misappropriation of PolyOne's trade secrets, it has suffered damages in an amount to be proven at trial.

### Count IV – Breach of Duty of Loyalty/Faithless Servant

56. PolyOne incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

57. While an employee of PolyOne, Mr. Saunby owed PolyOne a duty of loyalty, including, without limitation, a duty to act at all times with good faith and loyalty to PolyOne.

58. Mr. Saunby's duty of loyalty encompasses, without limitation, obligations not to misappropriate or disclose PolyOne's confidential, proprietary and trade secret information, misappropriate PolyOne's opportunities for his own benefit, or compete against PolyOne or otherwise undermine its business relationships and dealings for his personal gain to the detriment of PolyOne.

59. PolyOne conferred trust and confidence in Mr. Saunby that he would abide by his duty of loyalty.

60. Mr. Saunby, while still employed with and accepting a salary from PolyOne, accepted employment with LG and, for a period of at least two months, worked for LG, attended sales meetings, met with customers on behalf of LG, and accepted a salary from LG, a competitor of PolyOne. Mr. Saunby's conduct violates his duty of loyalty to PolyOne.

13

61. Mr. Saunby's breach of his duty of loyalty has caused PolyOne to suffer damages in an amount to be determined, including, but not limited to, the loss of business and commercial reputation, goodwill, business and economic opportunities.

62. Mr. Saunby, through the breach of his duty of loyalty, has gained profits and received compensation, including salary and bonuses, while in breach of his duty of loyalty to PolyOne. Mr. Saunby is required to disgorge the profits and compensation earned during or as a result of the breach.

63. Mr. Saunby's breach of his duty of loyalty was knowing, intentional and reckless, and was of such an aggravated character as to warrant the imposition of punitive damages.

### Count V - Fraud

64. PolyOne incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

65. From the period of June 2014 to August 2014, Mr. Saunby falsely represented to PolyOne that he was a faithful and loyal employee to PolyOne, and he failed to disclose to PolyOne that he was contemporaneously working for LG, PolyOne's competitor. Specifically Mr. Saunby did not disclose to PolyOne, at any time during or after his employment, that he had also accepted employment with a direct competitor, LG, and was working on LG's behalf to obtain clients, attend sales meetings, and sell LG's products.

66. As an employee of PolyOne, Mr. Saunby had a duty to disclose that he was also working for a competitor of PolyOne, but he did not do so.

67. Mr. Saunby falsely represented to PolyOne that he was a faithful and loyal employee, despite that he had full knowledge that he was assisting PolyOne's direct competitor while collecting a PolyOne paycheck.

14

68. PolyOne justifiably relied on Mr. Saunby's misrepresentations and concealments.

69. As a direct and proximate result of Mr. Saunby's misrepresentations, PolyOne has suffered damages in an amount to be proven at trial.

70. Mr. Saunby's tortious actions were intentional, willful, wanton, and performed with malice. Accordingly, PolyOne should be awarded compensatory and punitive damages, and should also be awarded its attorneys' fees and the costs of this action.

**PRAYER FOR RELIEF**

Wherefore, PolyOne hereby requests that this Court enter a judgment in its favor and order:

A. that a permanent injunction be entered enjoining further breaches or attempted breaches of the Agreement;

B. that a permanent injunction be entered enjoining Mr. Saunby's use or disclosure of any of PolyOne's confidential or proprietary trade secret information;

C. specific performance by Mr. Saunby of the covenants contained in the Agreement concerning non-competition (including ¶5, attachment A and B and related provisions), such that the covenants begin to run from the date of entry by this Court of a permanent injunction;

D. that Mr. Saunby preserve and return to PolyOne any and all property of PolyOne or anything containing the information of PolyOne, including, without limitation, any material relating to PolyOne formulations and technical information, business strategy, pricing, margins, costs, profitability, and customer information;

E. that judgment be entered for PolyOne against Mr. Saunby for all compensatory, statutory and related damages;

F. that judgment be entered for PolyOne against Mr. Saunby for punitive damages;

15

G.    that PolyOne be awarded all of the costs and attorneys' fees it has incurred in connection with this action; and

H.    such other and further relief as this Court deems is just and proper.

Respectfully submitted,

/s/ Matthew D. Ridings
James D. Robenalt (0022165)
*Jim.Robenalt@ThompsonHine.com*
Matthew D. Ridings (0079402)
*Matt.Ridings@ThompsonHine.com*
Mark R. Butscha, Jr. (0088854)
*Mark.Butscha@ThompsonHine.com*
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 566-5500
Fax: (216) 566-5800

*Attorneys for Plaintiff PolyOne Corporation*

## JURY DEMAND

Pursuant to Rule 38 of the Ohio Rules of Civil Procedure, plaintiff hereby requests a trial by jury as to all issues so triable.

/s/ Matthew D. Ridings

*An Attorney for Plaintiff PolyOne Corporation*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing *First Amended Complaint* has been

served by electronic mail and ordinary mail, this 4th day of November, 2014, upon the

following:

Justin Vande Vrede, Esq.
21231 Cass Avenue
Clinton Township, MI
lawyerjustin@gmail.com
*Attorney for Defendant Troy Saunby*

/s/ Matthew D. Ridings
One of the Attorneys for Plaintiff PolyOne
Corporation

11831422.1



## EMPLOYEE AGREEMENT

I am entering into this Employee Agreement ("Agreement") in consideration of becoming employed by or continuing my employment with PolyOne Corporation. For purposes of this Agreement, PolyOne includes PolyOne Corporation and its direct and indirect parents, subsidiaries, affiliated or related companies, and business units for which I worked or had responsibility at the time of or during the two-year period prior to my employment termination.

**1. Position, Compensation, and Duties.** PolyOne agrees to employ me or to continue my employment, subject to Paragraph 19. PolyOne will pay me the compensation shown in its official records and will provide me with benefits in accordance with company policies in effect from time to time. During my employment, I will devote my entire business time and attention to furthering PolyOne's business and best interests. I will perform my assigned job responsibilities to the best of my ability. I will use my best efforts to promote and protect the good name of PolyOne and its officers, directors, employees, agents, products and services.

**2. Training and Instruction.** PolyOne will invest in training me about its products and services and on the use of its unique manufacturing, business and sales techniques in my employment. PolyOne will decide how to provide training and instruction and may provide or make available PolyOne property to further my training and assist me in my duties. I will make effective and non-wasteful use of PolyOne's property. I will use my best efforts to learn about PolyOne products, services, methods and techniques.

**3. Protection of PolyOne.** I agree that PolyOne's success depends to a considerable extent on its continuing goodwill and protecting its patents, inventions, discoveries and information, and that I may contribute to and have access to such matters and have frequent contact with existing and potential customers of PolyOne globally. I agree that trade secrets, know-how, and other confidential information of PolyOne, more fully described in Paragraphs 9 and 13 of this Agreement, gained by me during my PolyOne employment, were developed by PolyOne through substantial expenditures of time, effort and money and are PolyOne's valuable and unique property. I agree that the foregoing makes it necessary, in order to protect PolyOne's business, that I do not compete with PolyOne during my employment and for a reasonable period after

my employment ends, as further provided in this Agreement.

**4. Non-Competition During Employment.** During my PolyOne employment, I will not compete with PolyOne anywhere in the world. This includes, but is not limited to, my agreement that I will not engage in any Prohibited Activities during my employment. The Prohibited Activities for purposes of this Paragraph are:

(a) I am prohibited from being employed by or engaging in a business that competes with PolyOne's business;

(b) I am prohibited from soliciting customers, business, orders for, or selling any products or services in competition with, or for any business that competes with, the business of PolyOne;

(c) I am prohibited from diverting, enticing, or taking away any customers, business, orders or sales of PolyOne or attempting to do so; and/or

(d) I am prohibited from promoting or assisting, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in any business that competes with the business of PolyOne.

**5. Non-Competition After Employment.** I agree that I will not compete with PolyOne by engaging in certain prohibited activities after my employment terminates due to voluntary resignation or for Serious Cause, as set forth in Attachment A. Attachment A applies to me if, at the time of or during the two-year period prior to my employment termination, I had sales, sales management, marketing, product management, technical, plant management, manufacturing management, sourcing, or production planning responsibilities or I participated in a long-term incentive plan or received an equity based award. Attachment A is included in and is a part of this Agreement.

Employee needs to initial and date each page  *T.S.*

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

**Exhibit A**



**6.** *Non-Solicitation of Employees and Others.* During my employment and for one year after my employment terminates for any reason, I will not directly or indirectly interfere with PolyOne's business by hiring, raiding, or soliciting any of PolyOne's employees to terminate their employment, or disrupt the relationship between PolyOne and any of its consultants, agents, representatives or vendors. I acknowledge that this covenant is necessary to enable PolyOne to maintain a stable workforce and remain in business.

**7.** *Direct and Indirect Participation.* I will be in violation of this Agreement, including Paragraphs 4, 5, 6 and Attachment A, if I engage in any of the prohibited activities directly as an individual on my own account, or indirectly as a partner, joint venturer, employee, agent, salesperson, consultant, officer and/or director of any firm, association, partnership, corporation or other entity, or as a stockholder of any corporation in which I or my spouse, child or parent owns, directly or indirectly, individually or in the aggregate, more than five percent (5%) of the outstanding stock.

**8.** *Extension of Obligations.* If it is judicially determined that I violated any of my obligations under Paragraphs 5, 6, and/or Attachment A, then each obligation I am found to have violated shall automatically be extended by a period of time equal in length to time period during which such violation(s) occurred.

**9.** *Confidential Information.* I acknowledge that PolyOne owns or possesses in trust from other parties Confidential Information. "Confidential Information" is any kind of information in any form that is not known by the general public. It also includes all documents or items that reflect what I have done with, or thought about, the Confidential Information ("Derivative Works"). There are many types of Confidential Information. A few examples of Confidential Information are originals and copies of technical information (such as formulas, trade secrets, inventions, and designs); financial information (such as projections, forecasts, budgets, and plans); and business and manufacturing information (such as plans, strategies, processes, competitive analyses, training materials, and lists and information about customers, potential customers, vendors, and employees).

**10.** *Internal Use of Confidential Information.* PolyOne will inform me of Confidential Information that I need to know to perform my work. Both PolyOne and I benefit from my knowing Confidential

Information. There may be limitations on what PolyOne can tell me about Confidential Information, and the U.S. and other governments may limit PolyOne's ability to disclose information to me if I am not located in their territories. Companies doing business with PolyOne may limit PolyOne's ability to disclose Confidential Information or impose other requirements. PolyOne may ask me to sign special confidentiality agreements, including where required by law or because of PolyOne's obligations to its customers or vendors. I may also learn of, or come into contact with, Confidential Information that PolyOne does not directly disclose to me for use in my job. *All Confidential Information is protected by this Agreement regardless of how it is learned by me or disclosed to me.*

**11.** *Protection of Confidential Information.* I promise to keep secret all Confidential Information learned by me or disclosed to me. I will keep the Confidential Information from the public (meaning anyone outside PolyOne) and from PolyOne employees and representatives who either do not have a genuine business need to know it or are not authorized to receive it. I will use my best efforts to protect the Confidential Information. I will use the Confidential Information only for PolyOne's benefit, and not for my own or anyone else's benefit. This obligation for specific Confidential Information will continue until someone other than me lawfully discloses that specific Confidential Information to the public. I agree that my failure to protect the Confidential Information as required by this Agreement is a material breach that may subject me to civil and criminal penalties in the United States of America and other countries, and to disciplinary action, which may include termination of my employment.

**12.** *Return Of Confidential Information and Property.* When my employment with PolyOne ends, I will return in good condition all PolyOne property and Confidential Information, including Derivative Works. If I do not return PolyOne property, Confidential Information, or Derivative Works, I agree that I will reimburse PolyOne for its expenses, including attorneys' fees, incurred in seeking the return of these items.

**13.** *Intellectual Property.* "Intellectual Property" includes patent rights, trademark rights, copyrights, and trade secrets, know-how, and any idea I conceive, any mark I create, and any expression of any idea that I have during my work on behalf of PolyOne. I agree that any Intellectual Property becomes owned by PolyOne the

Employee needs to initial and date each page  I. S.

2/1/2011
Page 2 of 7

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

moment that I conceive, create, or express it. I agree to promptly sign paperwork presented to me to assure that PolyOne has clear title to the Intellectual Property and sufficient authority from me to act to protect it. Paperwork may include patent applications, copyright applications, and other documents for filing with a government office. Other paperwork may include forms of invention records, laboratory notebooks, and other internal documentation. I agree that I will not reveal to the public any Intellectual Property before PolyOne authorizes me to do so. After my employment ends, I will continue to make myself available to review and sign other documents, prepared at PolyOne's expense, to further prove PolyOne's rights in my work.

**14.** *Acknowledgement of Value.* I acknowledge that (a) the Confidential Information PolyOne entrusts to me or that I may come in contact with; (b) the Derivative Works I may create by being exposed to Confidential Information; and (c) the Intellectual Property known to me or created by me are all very valuable to PolyOne. I understand that PolyOne will be severely and irreversibly damaged if I violate my promises in this Agreement. I understand that PolyOne may need to act quickly to protect its Confidential Information, Derivative Works, and Intellectual Property from being disclosed to the public or used without PolyOne's consent, and may seek an injunction or other court order against me or anyone else causing or encouraging me to violate my obligations under this Agreement.

**15.** *Disclosure of Agreement.* While employed by PolyOne and for two (2) years thereafter, I will communicate the contents of this Agreement to any person, firm, association, partnership, corporation or other entity which I intend to be employed by, associated with, or represent.

**16.** *Confidential Information of Others.* I agree that I have not and will not disclose to PolyOne or use in my PolyOne employment any confidential information belonging to my former employer(s) or under any other contractual obligation of confidentiality. I agree that I am required to report any request by PolyOne employees to use or disclose the confidential information of others to my human resources representative. Except as I have already disclosed and provided to PolyOne, I warrant that I am not bound by a confidentiality agreement or other agreement that precludes or limits my right to work for PolyOne and to disclose to PolyOne any ideas, inventions, discoveries, improvements, designs or other information that may be conceived during my PolyOne employment.

2/1/2011
Page 3 of 7

**17.** *Injunctive Relief.* I acknowledge and agree that the remedy at law available to PolyOne for breach of any of my obligations under this Agreement would be inadequate. I therefore agree that, in addition to any other rights or remedies that PolyOne may have at law or in equity, temporary and permanent injunctive relief may be granted in any proceeding that may be brought to enforce any provision contained in Paragraphs 4, 5, 6, 11, 12, 13, 16 and Attachment A inclusive, of this Agreement, without the necessity of proof of actual damage.

**18.** *Reasonable Restrictions.* I acknowledge that my obligations under this Agreement are reasonable in the context of the nature of PolyOne's business and the competitive injuries likely to be sustained by PolyOne if I violate my obligations. I further acknowledge that this Agreement is made in consideration of, and is adequately supported by the agreement of PolyOne to employ or to continue to employ me, which I acknowledge constitutes good, valuable and sufficient consideration.

**19.** *Employment Termination.* I agree that my employment is at will. This means that I can terminate this Agreement and my employment at any time for any reason and PolyOne can terminate my employment at any time for any lawful reason, with or without cause and with or without notice. PolyOne will pay me amounts that I am entitled to by law or pursuant to a severance plan, if any, that is in effect and applies to me at the time my employment is terminated. I agree that I waive my right to severance payments if I violate any provision of this Agreement, or if I induced PolyOne to enter into this Agreement by concealing or misrepresenting a material fact.

**20.** *Effective Period.* This Agreement will be in effect during my employment and will survive and continue in effect after my employment ends for any reason for the period of time I continue to have obligations under this Agreement.

**21.** *Entire Agreement.* This Agreement sets forth the complete and exclusive agreement between PolyOne and me regarding the types of obligations addressed by this Agreement. This Agreement supersedes any prior written or oral agreements or understanding, express or implied, between PolyOne and me regarding the same or similar types of obligations.

**22.** *Changes to Agreement; Waiver.* Changes or additions to this Agreement, other than the evolving definition of Prohibited Competitors as listed in

Employee needs to initial and date each page *T.S.*

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

Attachment B, shall not be effective unless they are in writing and signed by me and an authorized PolyOne representative. PolyOne's failure to enforce a provision of this Agreement does not waive that provision or any other provision of this Agreement, nor will it affect PolyOne's right to enforce this Agreement in the future.

**23. Assignment.** This Agreement is not assignable by either party without the prior written consent of the other, except that PolyOne may assign it to a successor of all or any part of PolyOne's business or assets or to any of PolyOne's direct or indirect subsidiaries or affiliates.

**24. Severability.** The provisions of this Agreement are severable. This means that if a court of competent jurisdiction holds a provision to be invalid, the remainder of this Agreement shall continue to be valid and enforceable.

**25. Law and Jurisdiction.** This Agreement is effective on the date set forth below. It shall be governed by and interpreted according to internal, substantive laws of the State of Ohio, United States of America. PolyOne and I agree that the state and federal courts located in Cleveland, Ohio shall have exclusive jurisdiction in any action arising out of this Agreement. PolyOne and I submit to the personal jurisdiction of such courts, consent to service of process, and waive any other requirements regarding personal jurisdiction, venue or service of process.

**26. Privacy.** I acknowledge that PolyOne will collect and maintain personal information about me, some or all of which may be maintained in computer databases and may involve the movement of the personal information across international borders. PolyOne will keep my personal information private, and will protect and use it for employment, benefits, and operational purposes as needed, in accordance with applicable law. My personal information may be given to PolyOne's outside providers to assist PolyOne in these activities, but PolyOne will require the outside providers to agree to protect and use the personal information as PolyOne would. If I live within the European Union, I may examine, during regular business hours, the personal information retained by PolyOne, and I have the right to have any erroneous information promptly corrected. The actual mechanism for examination and correction will vary from site-to-site within the European Union.

**27. Consultation.** I understand that this Agreement is an important document that affects my legal rights. PolyOne gave me adequate time to consider this Agreement and consult with my own legal counsel about its consequences. I represent that, before I signed this Agreement, I read it all carefully, fully understood it, and voluntarily agreed to its terms. I also represent that I am not violating any other agreement I have previously entered into by signing this Agreement.

IN WITNESS WHEREOF, Employee, having read and fully understood each of the foregoing provisions, and PolyOne, executed this Agreement as of this **20** day of **September**, 20**13**.

ACCEPTED FOR POLYONE CORPORATION

Troy A. Saunby
EMPLOYEE (Print name)

By: Kenneth M. Smith
(Print Name)

(Signature)

By: _____
(Signature)

Senior Vice President, Chief Human Resources Officer and Information Officer
(Title)

**Attachment A to Employee Agreement**

2/1/2011
Page 4 of 7

Employee needs to initial and date each page  T.S.

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

*Non-Competition After Employment*

This Attachment sets forth restrictions on me competing with PolyOne after my employment with PolyOne ends. This Attachment is a part of the Agreement.

I will not compete with PolyOne's business by engaging in any Prohibited Activities (as defined in Paragraph 2 below) within the Restricted Territory for one (1) year following my termination due to voluntary resignation or involuntary termination for Serious Cause, as defined in Paragraph 3 below.

*1. Restricted Territory.* The scope of the Restricted Territory is determined by my job duties and one or more of the following restricted territories may apply to me. The Restricted Territory is defined as and limited to any one or more of the following:

    (a)    **Sales, Sales Management, Marketing, or Product Management Responsibilities.** If, at the time of termination or during the two (2) years preceding my termination, I had any sales, sales management, marketing, or product management responsibilities, the Restricted Territory is:

        (i)   the geographic area(s) within a fifty (50) mile radius of any PolyOne facilities or location(s) in, to, or for which I worked (including a home office), as well as the geographic area(s) or territory to which I was assigned or had any responsibility (either direct or supervisory) at the time of my employment termination and at any time during the two (2) years preceding my termination and a fifty (50) mile radius around those areas/territories; and

        (ii)  all of the specific customer accounts, whether within or outside of the geographic area described in (a)(i) above, with which I had any contact or for which I had any responsibility (either direct or supervisory) at the time of my employment termination and at any time during the two (2) years preceding my termination;

    (b)    **Technical Responsibilities.** If, at the time of termination or during the two (2) years preceding my termination, I had any technical responsibilities, the Restricted Territory is the area(s) of PolyOne's business for which I had technical responsibility regardless of geographical location. Technical responsibilities includes, without limitation, responsibility for or oversight of the design, development, formulation, testing, quality control, color matching, technical service support, and engineering (including process and maintenance engineering) for such areas of PolyOne's business as thermoplastic resins and compounds, thermoplastic elastomer compounds, specialty polymers, coating systems, colors and additives, thermoplastic resin distribution, and/or any other area(s) of PolyOne's business existing on the termination date;

    (c)    **Plant Management, Manufacturing Management, Sourcing, or Production Planning Responsibilities.** If, at the time of termination or during the two (2) year period preceding my termination, I had plant or manufacturing management, sourcing, or production planning responsibilities, the Restricted Territory is the prohibited competitors (and their respective successors) as listed on Attachment B ("Prohibited Competitors") that are within the business unit for which I had such responsibilities, **and/or**

    (d)    **Participants in Long Term Incentive Plans or Recipients of Equity Based Awards.** If, at the time of termination or during the two (2) year period preceding my termination, I participated in any long-term incentive plan or received an equity based award, the Restricted Territory is the Prohibited Competitors (and their respective successors).

The one (1) year non-competition period set forth in Attachment A shall begin to run on my termination date only as to those areas of responsibility or plan or award participation set forth in Paragraphs 1(a), (b), (c) and (d) above that I had on the date of my termination. As to any area of responsibility or plan or award participation set forth in Paragraphs 1(a), (b), (c) and (d) that I had within the two (2) years prior to my termination date, but

Employee needs to initial and date each page  *1. S*

ceased to have prior to the date of termination, the one (1) year period shall begin to run on the date on which I ceased having such responsibility or participation.

2. **Prohibited Activities.** The Prohibited Activities within the Restricted Territory are:

    (a)    I am prohibited from being employed by or entering into or engaging in any business which competes with PolyOne's business within the Restricted Territory applicable to me as defined above;

    (b)    I am prohibited from soliciting customers, business, orders for, or selling any products or services in competition with, or for any business that competes with, the business of PolyOne;

    (c)    I am prohibited from diverting, enticing, or taking away any customers, business, orders or sales of PolyOne or attempting to do so; and/or

    (d)    I am prohibited from promoting or assisting, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in any business which competes with the business of PolyOne.

3. **Serious Cause.** "Serious Cause" termination means a termination for a serious violation of, or deliberate disregard of PolyOne's policies and procedures; violation of a cardinal safety rule; misappropriation of company property; fraud, dishonesty or bad faith toward PolyOne; gross dereliction of duties; engaging in or threatening workplace violence, including threats against any PolyOne employee or director; and termination for any other act or omission that PolyOne reasonably believes may prejudice significantly its best interests if employment is not terminated.

4. **Modification of Attachment B.** I agree that PolyOne may modify Attachment B from time to time in its sole discretion upon notice to me.

Employee needs to initial and date each page _T.S._

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

The following companies (and any and all respective successors) are Prohibited Competitors:

**Color**
A. Schulman
Americhem, Inc.
Ampacet
Clariant
Ferro Corporation
International Coatings
Jantex
Lakeside Plastics
Lancer
Lawson/Multi-Tech
Matsui
One Stroke
Printop
QCM
Rutland Plastic Technologies
Spartech Corporation
Standridge Color Corporation
Techmer PM
Teknor Apex Company
Union Ink
WM Plastics

**Corporate**
All listed Prohibited Competitors

**Geon Compounds**
AlphaGary Corporation
Auroca Plastics Inc.
Colorite Polymers – A Tekniplex Company
Formosa Plastics Corporation, U.S.A.
Georgia Gulf Corporation
Hoffman Plastic Compounds, Inc.
K-Bin, Inc
Manner Plastics, L.P.
PolyFlex Manufacturing Inc
Reinier Plastic Inc.
Rimtec Corporation
Teknor Apex Company

**PolyOne Distribution**
Amco
Ashland Distribution
Bamberger Polymers, Inc.
Chase Plastics
Canada Colors and Chemicals Limited
M. Holland Company
Polimeros Nacionales
Promaplast S.A. de C.V.
Ravago Group including Entec Polymers LLC, H. Muehlstein & Co., Channel Prime Alliance, LCC
Resinas Colores y Compuestos S.A. de C.V.
Telch

**Producer Services**
A. Schulman
Adell Plastics
Alloy Polymers
Ametek
Ingenia Polymers
Matrix, Inc.
Modern Dispersions
Spartech

**Specialty Coatings**
Calhoun Plastics and Chemicals, Inc.
California Medical Innovations
Chemionics Corporation
Lakeside Plastics, Inc.
Loes Enterprises, Inc.
Marchem Corporation
Miltec, Inc.
Resinoplast
Rutland Plastic Technologies
The Thermoclad Company
Union City Industries, Inc.
Vi-Chem Corporation

**Specialty Engineered Materials**
A.Schulman
AES (ExxonMobil TPV)
Alpha-Gary
BASF TPU
Bayer TPU
Clariant
Compounding Solutions
Cousin Tessier
Dow Chemical Specialty Elastomers (OBC)
DSM Group
Exxon-Mobil Thermoplastic Vulcanizates
Foster Corporation
Infinity Polymers
KRAIBURG
Kraton Polymers
Lubrizol – TPU Business
The Matrixx Group Inc.
Modified Plastics
Multibase
O'Neil Color
Polymedex
Polymer Solutions
Putnam Plastics
RTP Company
SABIC/LNP
Teknor Apex Company

**Specialty Resins**
Formosa Plastics Corporation, U.S.A.
Mexichem S.A.B. de C.V.
Policyd, S.A. de C.V.
Polymer Resource Associates
Shawnee Chemical Company
Vinnolit GmbH & Co. KG

Employee needs to initial and date each page _____

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

17-04019-mlo    Doc 1    Filed 01/05/17    Entered 01/05/17 11:29:38    Page 38 of 57



## EMPLOYEE AGREEMENT

I am entering into this Employee Agreement ("Agreement") in consideration of becoming employed by or continuing my employment with PolyOne Corporation. For purposes of this Agreement, PolyOne includes PolyOne Corporation and its direct and indirect parents, subsidiaries, affiliated or related companies, and business units for which I worked or had responsibility at the time of or during the two-year period prior to my employment termination.

**1. Position, Compensation, and Duties.** PolyOne agrees to employ me or to continue my employment, subject to Paragraph 19. PolyOne will pay me the compensation shown in its official records and will provide me with benefits in accordance with company policies in effect from time to time. During my employment, I will devote my entire business time and attention to furthering PolyOne's business and best interests. I will perform my assigned job responsibilities to the best of my ability. I will use my best efforts to promote and protect the good name of PolyOne and its officers, directors, employees, agents, products and services.

**2. Training and Instruction.** PolyOne will invest in training me about its products and services and on the use of its unique manufacturing, business and sales techniques in my employment. PolyOne will decide how to provide training and instruction and may provide or make available PolyOne property to further my training and assist me in my duties. I will make effective and non-wasteful use of PolyOne's property. I will use my best efforts to learn about PolyOne products, services, methods and techniques.

**3. Protection of PolyOne.** I agree that PolyOne's success depends to a considerable extent on its continuing goodwill and protecting its patents, inventions, discoveries and information, and that I may contribute to and have access to such matters and have frequent contact with existing and potential customers of PolyOne globally. I agree that trade secrets, know-how, and other confidential information of PolyOne, more fully described in Paragraphs 9 and 13 of this Agreement, gained by me during my PolyOne employment, were developed by PolyOne through substantial expenditures of time, effort and money and are PolyOne's valuable and unique property. I agree that the foregoing makes it necessary, in order to protect PolyOne's business, that I do not compete with PolyOne during my employment and for a reasonable period after

my employment ends, as further provided in this Agreement.

**4. Non-Competition During Employment.** During my PolyOne employment, I will not compete with PolyOne anywhere in the world. This includes, but is not limited to, my agreement that I will not engage in any Prohibited Activities during my employment. The Prohibited Activities for purposes of this Paragraph are:

 (a) I am prohibited from being employed by or engaging in a business that competes with PolyOne's business;

 (b) I am prohibited from soliciting customers, business, orders for, or selling any products or services in competition with, or for any business that competes with, the business of PolyOne;

 (c) I am prohibited from diverting, enticing, or taking away any customers, business, orders or sales of PolyOne or attempting to do so; and/or

 (d) I am prohibited from promoting or assisting, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in any business that competes with the business of PolyOne.

**5. Non-Competition After Employment.** I agree that I will not compete with PolyOne by engaging in certain prohibited activities after my employment terminates due to voluntary resignation or for Serious Cause, as set forth in Attachment A. Attachment A applies to me if, at the time of or during the two-year period prior to my employment termination, I had sales, sales management, marketing, product management, technical, plant management, manufacturing management, sourcing, or production planning responsibilities or I participated in a long-term incentive plan or received an equity based award. Attachment A is included in and is a part of this Agreement.

3/27/2007
Page 1 of 7

Employee needs to initial and date each page T.S. 6/8/07

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ



**6.** *Non-Solicitation of Employees and Others.* During my employment and for one year after my employment terminates for any reason, I will not directly or indirectly interfere with PolyOne's business by hiring, raiding, or soliciting any of PolyOne's employees to terminate their employment, or disrupt the relationship between PolyOne and any of its consultants, agents, representatives or vendors. I acknowledge that this covenant is necessary to enable PolyOne to maintain a stable workforce and remain in business.

**7.** *Direct and Indirect Participation.* I will be in violation of this Agreement, including Paragraphs 4, 5, 6 and Attachment A, if I engage in any of the prohibited activities directly as an individual on my own account, or indirectly as a partner, joint venturer, employee, agent, salesperson, consultant, officer and/or director of any firm, association, partnership, corporation or other entity, or as a stockholder of any corporation in which I or my spouse, child or parent owns, directly or indirectly, individually or in the aggregate, more than five percent (5%) of the outstanding stock.

**8.** *Extension of Obligations.* If it is judicially determined that I violated my obligations under Paragraphs 5, 6, and/or Attachment A, then each obligation I am found to have violated shall automatically be extended by a period of time equal in length to time period during which such violation(s) occurred.

**9.** *Confidential Information.* I acknowledge that PolyOne owns or possesses in trust from other parties Confidential Information. "Confidential Information" is any kind of information in any form that is not known by the general public. It also includes all documents or items that reflect what I have done with, or thought about, the Confidential Information ("Derivative Works"). There are many types of Confidential Information. A few examples of Confidential Information are originals and copies of technical information (such as formulas, trade secrets, inventions, and designs); financial information (such as projections, forecasts, budgets, and plans); and business and manufacturing information (such as plans, strategies, processes, competitive analyses, training materials, and lists and information about customers, potential customers, vendors, and employees).

**10.** *Internal Use of Confidential Information.* PolyOne will inform me of Confidential Information

that I need to know to perform my work. Both PolyOne and I benefit from my knowing Confidential Information. There may be limitations on what PolyOne can tell me about Confidential Information, and the U.S. and other governments may limit PolyOne's ability to disclose information to me if I am not located in their territories. Companies doing business with PolyOne may limit PolyOne's ability to disclose Confidential Information or impose other requirements. PolyOne may ask me to sign special confidentiality agreements, including where required by law or because of PolyOne's obligations to its customers or vendors. I may also learn of, or come into contact with, Confidential Information that PolyOne does not directly disclose to me for use in my job. *All Confidential Information is protected by this Agreement regardless of how it is learned by me or disclosed to me.*

**11.** *Protection of Confidential Information.* I promise to keep secret all Confidential Information learned by me or disclosed to me. I will keep the Confidential Information from the public (meaning anyone outside PolyOne) and from PolyOne employees and representatives who either do not have a genuine business need to know it or are not authorized to receive it. I will use my best efforts to protect the Confidential Information. I will use the Confidential Information only for PolyOne's benefit, and not for my own or anyone else's benefit. This obligation for specific Confidential Information will continue until someone other than me lawfully discloses that specific Confidential Information to the public. I agree that my failure to protect the Confidential Information as required by this Agreement is a material breach that may subject me to civil and criminal penalties in the United States of America and other countries, and to disciplinary action, which may include termination of my employment.

**12.** *Return Of Confidential Information and Property.* When my employment with PolyOne ends, I will return in good condition all PolyOne property and Confidential Information, including Derivative Works. If I do not return PolyOne property, Confidential Information, or Derivative Works, I agree that I will reimburse PolyOne for its expenses, including attorneys' fees, incurred in seeking the return of these items.

**13.** *Intellectual Property.* "Intellectual Property" includes patent rights, trademark rights, copyrights, and

Employee needs to initial and date each page *T.S. 6/8/07*

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

trade secrets, know-how, and any idea I conceive, any mark I create, and any expression of any idea that I have during my work on behalf of PolyOne. I agree that any Intellectual Property becomes owned by PolyOne the moment that I conceive, create, or express it. I agree to promptly sign paperwork presented to me to assure that PolyOne has clear title to the Intellectual Property and sufficient authority from me to act to protect it. Paperwork may include patent applications, copyright applications, and other documents for filing with a government office. Other paperwork may include forms of invention records, laboratory notebooks, and other internal documentation. I agree that I will not reveal to the public any Intellectual Property before PolyOne authorizes me to do so. After my employment ends, I will continue to make myself available to review and sign other documents, prepared at PolyOne's expense, to further prove PolyOne's rights in my work.

**14.** *Acknowledgement of Value.* I acknowledge that (a) the Confidential Information PolyOne entrusts to me or that I may come in contact with; (b) the Derivative Works I may create by being exposed to Confidential Information; and (c) the Intellectual Property known to me or created by me are all very valuable to PolyOne. I understand that PolyOne will be severely and irreversibly damaged if I violate my promises in this Agreement. I understand that PolyOne may need to act quickly to protect its Confidential Information, Derivative Works, and Intellectual Property from being disclosed to the public or used without PolyOne's consent, and may seek an injunction or other court order against me or anyone else causing or encouraging me to violate my obligations under this Agreement.

**15.** *Disclosure of Agreement.* While employed by PolyOne and for two (2) years thereafter, I will communicate the contents of this Agreement to any person, firm, association, partnership, corporation or other entity which I intend to be employed by, associated with, or represent.

**16.** *Confidential Information of Others.* I agree that I have not and will not disclose to PolyOne or use in my PolyOne employment any confidential information belonging to my former employer(s) or under any other contractual obligation of confidentiality. I agree that I am required to report any request by PolyOne employees to use or disclose the confidential information of others to my human resources representative. Except as I have already disclosed and

provided to PolyOne, I warrant that I am not bound by a confidentiality agreement or other agreement that precludes or limits my right to work for PolyOne and to disclose to PolyOne any ideas, inventions, discoveries, improvements, designs or other information that may be conceived during my PolyOne employment.

**17.** *Injunctive Relief.* I acknowledge and agree that the remedy at law available to PolyOne for breach of any of my obligations under this Agreement would be inadequate. I therefore agree that, in addition to any other rights or remedies that PolyOne may have at law or in equity, temporary and permanent injunctive relief may be granted in any proceeding that may be brought to enforce any provision contained in Paragraphs 4, 5, 6, 11, 12, 13, 16 and Attachment A inclusive, of this Agreement, without the necessity of proof of actual damage.

**18.** *Reasonable Restrictions.* I acknowledge that my obligations under this Agreement are reasonable in the context of the nature of PolyOne's business and the competitive injuries likely to be sustained by PolyOne if I violate my obligations. I further acknowledge that this Agreement is made in consideration of, and is adequately supported by the agreement of PolyOne to employ or to continue to employ me, which I acknowledge constitutes good, valuable and sufficient consideration.

**19.** *Employment Termination.* I agree that my employment is at will. This means that I can terminate this Agreement and my employment at any time for any reason and PolyOne can terminate my employment at any time for any lawful reason, with or without cause and with or without notice. PolyOne will pay me amounts that I am entitled to by law or pursuant to a severance plan, if any, that is in effect and applies to me at the time my employment is terminated. I agree that I waive my right to severance payments if I violate any provision of this Agreement, or if I induced PolyOne to enter into this Agreement by concealing or misrepresenting a material fact.

**20.** *Effective Period.* This Agreement will be in effect during my employment and will survive and continue in effect after my employment ends for any reason for the period of time I continue to have obligations under this Agreement.

**21.** *Entire Agreement.* This Agreement sets forth the complete and exclusive agreement between PolyOne and me regarding the types of obligations addressed by this

Employee needs to initial and date each page *T.S. 6/8/07*

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

Agreement. This Agreement supersedes any prior written or oral agreements or understanding, express or implied, between PolyOne and me regarding the same or similar types of obligations.

**22. *Changes to Agreement; Waiver.*** Changes or additions to this Agreement, other than the evolving definition of Prohibited Competitors as listed in Attachment B, shall not be effective unless they are in writing and signed by me and an authorized PolyOne representative. PolyOne's failure to enforce a provision of this Agreement does not waive that provision or any other provision of this Agreement, nor will it affect PolyOne's right to enforce this Agreement in the future.

**23. *Assignment.*** This Agreement is not assignable by either party without the prior written consent of the other, except that PolyOne may assign it to a successor of all or any part of PolyOne's business or assets or to any of PolyOne's direct or indirect subsidiaries or affiliates.

**24. *Severability.*** The provisions of this Agreement are severable. This means that if a court of competent jurisdiction holds a provision to be invalid, the remainder of this Agreement shall continue to be valid and enforceable.

**25. *Law and Jurisdiction.*** This Agreement is effective on the date set forth below. It shall be governed by and interpreted according to internal, substantive laws of the State of Ohio, United States of America. PolyOne and I agree that the state and federal courts located in Cleveland, Ohio shall have exclusive jurisdiction in any

action arising out of this Agreement. PolyOne and I submit to the personal jurisdiction of such courts, consent to service of process, and waive any other requirements regarding personal jurisdiction, venue or service of process.

**26. *Privacy.*** I acknowledge that PolyOne will collect and maintain personal information about me, some or all of which may be maintained in computer databases and may involve the movement of the personal information across international borders. PolyOne will keep my personal information private, and will protect and use it for employment, benefits, and operational purposes as needed, in accordance with applicable law. My personal information may be given to PolyOne's outside providers to assist PolyOne in these activities, but PolyOne will require the outside providers to agree to protect and use the personal information as PolyOne would. If I live within the European Union, I may examine, during regular business hours, the personal information retained by PolyOne, and I have the right to have any erroneous information promptly corrected. The actual mechanism for examination and correction will vary from site-to-site within the European Union.

**27. *Consultation.*** I understand that this Agreement is an important document that affects my legal rights. PolyOne gave me adequate time to consider this Agreement and consult with my own legal counsel about its consequences. I represent that, before I signed this Agreement, I read it all carefully, fully understood it, and voluntarily agreed to its terms. I also represent that I am not violating any other agreement I have previously entered into by signing this Agreement.

IN WITNESS WHEREOF, Employee, having read and fully understood each of the foregoing provisions, and PolyOne, executed this Agreement as of this _____ day of _____, 20___.

ACCEPTED FOR POLYONE CORPORATION

Troy A. Saunby
EMPLOYEE (Print name)

By: Kenneth M. Smith
(Print Name)

(Signature)

By: _____
(Signature)

Senior Vice President & Chief Human Resources Officer
(Title)

3/27/2007
Page 4 of 7

Employee needs to initial and date each page   T.S. 6/8/07

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

*Non-Competition After Employment*

This Attachment sets forth restrictions on me competing with PolyOne after my employment with PolyOne ends. This Attachment is a part of the Agreement.

I will not compete with PolyOne's business by engaging in any Prohibited Activities (as defined in Paragraph 2 below) within the Restricted Territory for one (1) year following my termination due to voluntary resignation or involuntary termination for Serious Cause, as defined in Paragraph 3 below.

*1. Restricted Territory.* The scope of the Restricted Territory is determined by my job duties and one or more of the following restricted territories may apply to me. The Restricted Territory is defined as and limited to any one or more of the following:

    (a)    **Sales, Sales Management, Marketing, or Product Management Responsibilities.** If, at the time of termination or during the two (2) years preceding my termination, I had any sales, sales management, marketing, or product management responsibilities, the Restricted Territory is:

        (i)  the geographic area(s) within a fifty (50) mile radius of any PolyOne location(s) in, to, or for which I worked (including a home office), was assigned or had any responsibility (either direct or supervisory) at the time of my employment termination and at any time during the two (2) years preceding my termination; and

        (ii)  all of the specific customer accounts, whether within or outside of the geographic area described in (a)(i) above, with which I had any contact or for which I had any responsibility (either direct or supervisory) at the time of my employment termination and at any time during the two (2) years preceding my termination;

    (b)    **Technical Responsibilities.** If, at the time of termination or during the two (2) years preceding my termination, I had any technical responsibilities, the Restricted Territory is the area(s) of PolyOne's business for which I had technical responsibility regardless of geographical location. Technical responsibilities includes, without limitation, responsibility for or oversight of the design, development, formulation, testing, quality control, color matching, technical service support, and engineering (including process and maintenance engineering) for such areas of PolyOne's business as thermoplastic resins and compounds, thermoplastic elastomer compounds, specialty polymers, coating systems, colors and additives, thermoplastic resin distribution, and/or any other area(s) of PolyOne's business existing on the termination date;

    (c)    **Plant Management, Manufacturing Management, Sourcing, or Production Planning Responsibilities.** If, at the time of termination or during the two (2) year period preceding my termination, I had plant or manufacturing management, sourcing, or production planning responsibilities, the Restricted Territory is the prohibited competitors (and their respective successors) as listed on Attachment B ("Prohibited Competitors") that are within the business unit for which I had such responsibilities, **and/or**

    (d)    **Participants in Long Term Incentive Plans or Recipients of Equity Based Awards.** If, at the time of termination or during the two (2) year period preceding my termination, I

Employee needs to initial and date each page T.S. 6/8/07

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

participated in any long-term incentive plan or received an equity based award, the Restricted Territory is the Prohibited Competitors (and their respective successors).

The one (1) year non-competition period set forth in Attachment A shall begin to run on my termination date only as to those areas of responsibility or plan or award participation set forth in Paragraphs 1(a), (b), (c) and (d) above that I had on the date of my termination. As to any area of responsibility or plan or award participation set forth in Paragraphs 1(a), (b), (c) and (d) that I had within the year prior to my termination date, but ceased to have prior to the date of termination, the one (1) year period shall begin to run on the date on which I ceased having such responsibility or participation.

2. *Prohibited Activities.* The Prohibited Activities within the Restricted Territory are:

    (a)    I am prohibited from being employed by or entering into or engaging in any business which competes with PolyOne's business within the Restricted Territory applicable to me as defined above;

    (b)    I am prohibited from soliciting customers, business, orders for, or selling any products or services in competition with, or for any business that competes with, the business of PolyOne;

    (c)    I am prohibited from diverting, enticing, or taking away any customers, business, orders or sales of PolyOne or attempting to do so; and/or

    (d)    I am prohibited from promoting or assisting, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in any business which competes with the business of PolyOne.

3. *Serious Cause.* "Serious Cause" termination means a termination for a serious violation of, or deliberate disregard of PolyOne's policies and procedures; violation of a cardinal safety rule; misappropriation of company property; fraud, dishonesty or bad faith toward PolyOne; gross dereliction of duties; engaging in or threatening workplace violence, including threats against any PolyOne employee or director; and termination for any other act or omission that PolyOne reasonably believes may prejudice significantly its best interests if employment is not terminated.

4. *Modification of Attachment B.* I agree that PolyOne may modify Attachment B from time to time in its sole discretion upon notice to me.

Employee needs to initial and date each page _I.S._ 6/8/07

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

*Prohibited Competitors*

**Effective November 2006**

The following companies (and any and all respective successors) are Prohibited Competitors:

**Vinyl**
Georgia Gulf Corporation
K-Bin, Inc.
Teknor Apex Company
Aurora Plastics Inc.
AlphaGary Corporation
Reinier Plastic Inc.
PolyFlex Manufacturing Inc.
Rimtec Corporation
Prime PVC, Inc.
Formosa Plastics Corporation
Manner Plastics, L.P.
Hoffman Plastic Compounds, Inc.

**Producer Services**
A. Schulman
Alloy Polymers, Inc.
Bayshore
Ametek, Inc.
Modern Dispersions, Inc. (MDI)
Spartech Corporation

**PolyOne Distribution**
Ashland
Entec Polymers LLC
H. Muehlstein & Co., Inc./Channel Prime Alliance, LLC
Bamberger Polymers, Inc.
M. Holland Company
Canada Colors and Chemicals Limited

**Engineered Materials**
General Electric Plastics - LNP
DSM Group
RTP Company
GLS Corporation
The Matrixx Group Inc.
Teknor Apex Company
Exxon – AES Division

**Color**
Clariant
A. Schulman
Ampacet
Americhem, Inc.
Spartech Corporation
Cabot Corporation
Ferro Corporation

**Specialty Resins**
Colorite (Colorite Plastics Company) or (Colorite Polymers – A Tekniplex Company)
Formosa Plastics Coporation, U.S.A.

**PCS**
Marchem Corporation
Rutland Plastic Technologies
Penn Color, Inc.
Lakeside Plastics, Inc. (Oshkosh, WI?)

**Corporate**
All listed Prohibited Competitors

Employee needs to initial and date each page   T.S. 4/8/07

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

POLYONE CORPORATION REPAYMENT AGREEMENT

I have received a one-time lump sum bonus of $10,000 from PolyOne which I will receive in a lump sum payment less applicable taxes.

In consideration of the financial investment and commitment PolyOne is making on my behalf, I agree to this Repayment Agreement as a condition of my receipt of the lump sum bonus.

I agree that if I leave my position of employment or my employment is terminated for any reason other than job elimination/reduction in force within the first twelve (12) months of receiving the above lump sum payment, I will be required to reimburse PolyOne for 100% of this payment. Reimbursement of this payment must be made within thirty (30) days of my last day of employment with PolyOne.

I further agree that if I leave my position of employment or my employment is terminated for any reason other than job elimination/reduction in force within more than twelve (12) months and up to and including twenty-four (24) months of receiving the lump sum payment, I will be required to reimburse PolyOne for 50% of the above lump sum payment. Reimbursement of this payment must be made within thirty (30) days of my last day of employment with PolyOne.

I agree and authorize that any amounts I owe to PolyOne under this Agreement may be deducted and offset against any payments PolyOne owes me at the time of my employment termination including, but not limited to, wages, incentive pay, expenses, vacation pay and/or severance pay. After such deduction, any remaining balance owed to PolyOne will continue to be my obligation to PolyOne. I agree to repay any remaining balance owed after the deduction from my final paycheck to PolyOne within thirty (30) days of the date of employment termination.

If, for any reason, any amount due and owing from me under this Agreement is not fully satisfied in accordance with the foregoing, PolyOne will be entitled to collect the entire amount due from me and to take any necessary legal action to do so. In the event that PolyOne must resort to legal action and/or retain an attorney or collection agent in connection with any amounts owed under this Agreement, I agree that PolyOne will be entitled to recover from me, in addition to the amount due under this Agreement, all related attorneys' fees, collection fees, and costs.

I understand that as a condition of receipt of this payment, I am required to sign PolyOne's current non-competition employee agreement if I have not already signed it. I also agree that nothing in this agreement alters the at-will nature of my employment, meaning that I can terminate my employment with PolyOne at any time and for any reason and that PolyOne can terminate my employment at any time and for any lawful reason.

I have carefully read and fully understand this Agreement. I voluntarily accept all its terms and conditions. I have been given a full and fair opportunity to discuss this matter with an attorney or advisor of my choice. I understand that this Agreement is legally binding upon me and that the interpretation and performance of this agreement shall be governed by the laws of the State of Ohio without regard to Ohio's choice of law principals.

I agree that this is the entire Agreement among the parties regarding the matters contained herein. This Agreement may only be modified by a written agreement signed by both parties. Any prior or contemporaneous promises, representations or agreements related to the matters contained herein are expressly revoked or waived. My signature below indicates that I have fully read this Agreement, fully understand and agree to its terms and am entering into this Agreement knowingly and voluntarily.

I understand that the lump sum payment will be paid within 30 days of the date this original signed agreement is returned to Melissa Marin, 1275 Windham Parkway, Romeoville, IL 60446.

_Troy A. Saunby_
Employee Name – Please Print

_[signature]_                                    9/20/13
Employee Signature                               Date

_[signature]_                                    9/20/13
Human Resources Representative                   Date

9/13

 **LG Chem**

LG Chem America, Inc.
910 Sylvan Avenue, Englewood Cliffs, NJ 07632
Tel: 201-816-2000  Fax: 201-816-0281
www.lgchem.com

May 28, 2014

Troy Saunby
53036 Pigeon Creek Drive
Chesterfield, MI 48047

Dear Mr. Troy Saunby,

On behalf of LG Chem America, Inc., I am pleased to offer you a position as the North American Automotive Sales Manager of LGCAI. Please note the following information with regards to your hire:

1. Official company working hours are from 8:00AM to 5:00PM. There is a one hour lunch break from 12:00PM to 1:00PM.
2. This is a full-time, exempt position effective Monday, June 9.
3. Medical, dental, vision, and life insurance plans will take effect immediately.
4. Your annual gross salary will be $150,000, which will be paid on a semi-monthly basis.
5. A conditional signing bonus in the amount of $30,000 will be paid on the first pay period after the start of employment. If you, the employee, terminates this Agreement within 2 years after the effective date of joining, you shall repay an amount equal to the whole amount of the signing bonus.
6. Information regarding your vacation and personal day calculations will be provided to you upon your arrival.

Materials further detailing the above benefits will be provided separately. If you wish to accept this offer, please sign in the space provided below and return to Human Resources as soon as possible.

We look forward to having you join our Company and become an enthusiastic member of our team. However, we recognize that you retain the option, as does the Company, of ending your employment with the Company at any time, with or without notice and with or without cause. As such, your employment with the Company is at-will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time.

Should you have any questions about starting with the Company, please do not hesitate to contact me directly at (201) 816-2303.

Sincerely,

Angela Kwon
Human Resources

I, Troy Saunby, agree to the terms of employment set forth above.

_____                    5/30/14
Signature                                     Date

Anytime

Fri, Aug 15, 9:42 AM

What is the name of your new co again?

Imerys

Thx

Fri, Aug 15, 3:29 PM

Still working on this issue. Will get back to u as soon as I can

Delivered

Ok - thanks. Craig is


Exhibit E

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

| From: | Saunby, Troy (CHE) </O=EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=TROY.SAUNBY> |
|---|---|
| Sent: | Wednesday, May 22, 2013 6:15 PM |
| To: | tracysaunby@yahoo.com |
| Subject: | Please print this for me |

Hello Troy ,

This e-mail is to confirm your interview schedule for the **Automotive Plastic Resin Sales/Business Development** opportunity with **LG Chem** (www.lgchem.com) in their newly established Troy , MI location to serve the greater Detroit area. Below I have provided the confirmed schedule, address, and interviewers.

To share what to expect based on a previous candidate's feedback, the interview will be unstructured and conversational. The interviewers will ask you to introduce yourself and your experiences and follow-up questions are to be expected. Mr. Cho and Mr. Choi will also share what they are looking for in this role and what their expectations will be in this position.

As I have shared with you previously, the opportunity is new business for LG Chem and they are seeking an individual that can oversee their business development efforts for the Detroit region in the Automotive sector for their line of Plastic Resin products. I apologize that I have been unable to provide a more detailed job description, but this conversation with LG Chem should serve to better clarify the opportunity for you.

We did share your list of contacts in the automotive industry with Mr. Cho (Director), but he does not have a copy of the list. If you can, please just bring the list as a supplemental material when discussing what you can bring to the role. We also informed them that you will be on call that day and therefore unable to wear a full suit.

Please feel free to contact me any time if you have any questions. I'll also reach out if I get any additional information to share.

Have a great rest of your week and Good Luck for Thursday afternoon!

Best,

Grace

<u>**Interview schedule:**</u>

1



| |
|---|
| **Thursday, 5/23/2013 @ 1:00PM EST** |
| **Location:** |
| **LG Chem Power Inc** |
| **1857 Technology Drive** |
| **Troy, MI 48083** |
| **Interviewer(s):** |
| **Mr. SangHyun Cho, Director of the International Sales Team** <br><br> **\* when you arrive to the facility, please give Mr. Cho a call on his mobile and he will come out to greet you and facilitate the interview. His mobile#: 619 889 7474** <br><br> **Mr. Aiden (In-Ho) Choi, Senior Technical Manager** |

**Grace Bae** | Consultant
**HRCap, Inc.**
*Total HR Solutions Provider*
Direct: 201.567.1500 ext.207

**Mobile:** 201.918.0892

**Fax:** 201.567.1531

gracebae@hrcap.com

www.hrcap.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any retransmission, dissemination or other use of this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. Comments or statements are sent in good faith but do not necessarily reflect the views of HRCap, Inc.

Delete Reply Reply All Forward Move Spam Actions Next Previous

Thanks,

Troy A. Saunby
North American Automotive Manager
**PolyOne** Distribution

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

Cell-586-242-0018
Fax-586-949-1067
Troy.Saunby@PolyOne.com

PolyOne Corporation is a global leader in innovative polymer materials, services, and solutions

33587 Walker Road, Avon Lake, Ohio USA 44012

This email and any attachment(s) may contain confidential information. If you were not the intended recipient, please notify the PolyOne person who sent you this email and immediately delete the message and any attachments without copying them or disclosing them. Thank you.

To view this disclaimer in other languages: www.polyone.com/disclaimer

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

# EXIT INTERVIEW QUESTIONNAIRE

NAME: Troy A. Saunby

LAST DAY WORKED: 8/15/14

REASON FOR LEAVING: (primary) Good opportunity _____ (secondary)

IF COMPETITOR: (optional) NONE
Who, where, position

EMPLOYMENT CONDITIONS: (Rating Scale: 5=very satisfied, 4=satisfied, 3=neutral, 2=dissatisfied, 1=very dissatisfied)

COMMENTS

| | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|
| COMPENSATION: | ⑤ | 4 | 3 | 2 | 1 |
| BENEFITS: | ⑤ | 4 | 3 | 2 | 1 |
| HOURS & WORKING CONDITIONS: | ⑤ | 4 | 3 | 2 | 1 |
| JOB DUTIES & RESPONSIBILITIES: | ⑤ | 4 | 3 | 2 | 1 |
| ADVANCEMENT OPPORTUNITIES: | ⑤ | 4 | 3 | 2 | 1 |
| TRAINING: | ⑤ | 4 | 3 | 2 | 1 |
| TOOLS & EQUIPMENT: | ⑤ | 4 | 3 | 2 | 1 |
| EFFECTIVENESS OF SUPERVISION: | ⑤ | 4 | 3 | 2 | 1 |
| COMPANY POLICIES: | ⑤ | 4 | 3 | 2 | 1 |
| COMMENTS: | | | | | |

## SEPARATION CHECKLIST / Items to Return

| | | RETURNED | DO NOT HAVE | WILL RETURN TO: |
|---|---|---|---|---|
| 1. | Laptop Computer(s) | | | Ted Combs |
| 2. | Desktop Computer(s) | N/a | | |
| 3. | Flash Drives / Thumb Drives | N/a | | |
| 4. | External Hard Drive | N/a | | |
| 5. | Printer | N/a | | |
| 6. | Cellular/Mobile Phone, Smart Phone | | | |
| 7. | Wireless Card (Aircards, Mifi, etc.) | | | Ted Combs |
| 8. | Micro Cells | | | Ted Combs |
| 9. | Tablet PC(s) | | | |
| 10. | Access Card(s) | | | |
| 11. | PolyOne training materials, library books, PolyOne Academy materials | | | Ted Combs |
| 12. | Credit Cards (including phone card and gas card) Leave gas card in car | | | |
| 13. | Pager | | | |
| 14. | Keys (building, office, filing cabinets, etc.) | | | |
| 15. | Uniforms | | | |
| 16. | Tools | | | |
| 17. | Company Car | | | Daulon |
| 18. | Virtual office Equipment (list) | | | |
| 19. | Advances/loans | N/a | | |
| 20. | PolyOne confidential documentation (explain as list below) * : electronic or hard/ paper copies | N/a | | |
| 21. | Banking tools(i.e. little fobls that allow access to bank accounts, etc.) | N/a | | |

* Confidential information is generally information that is not known by the general public. It includes, among other data, company technical information such as formulas, inventions and designs; financial information such as forecasts, budgets and plans; and business and manufacturing information such as strategies, competitive analyses, customer lists, business reports and training materials.

## NOTIFY SITE SECURITY PERSONNEL

Human Resources should notify location security personnel about employee's exit. Regular visitor's procedure should be applied to access the facility in the future.

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

**TO BE REVIEWED WITH EMPLOYEE:**

DONE:

1. Review benefits information (i.e. COBRA, 401(K), etc.). Provide "Contacts for Benefits" list

2. Outstanding balance on company credit card. If applicable, advise employee to complete expense report before leaving.

3. Discuss Employee Agreement, confidentiality agreements, etc. (provide copy(s) of agreements discussed)

4. Discussion with employee regarding whether he/she transferred, copied or stored PolyOne confidential information on personal computer, PDA's, SmartPhones or USB devices such as thumb drives, flash drives or external hard drives. If confirmed, list details on reverse side and immediately contact PolyOne IT Dept. to make arrangements to confirm deletion or return of such information from the employee.

5. If applicable, ensure employee adequately disables the activation lock before returning the iPhone (i.e. disables "Find My iPhone application)

6. Review vacation eligibility and payout (HR representative to complete vacation tab on SAP Transaction form)

7. Review final pay and/or severance pay (if any) and any other applicable payments (i.e. AIP, MIP, SIP, etc.)

8. If employee is in management role performance appraisals/documentation on their current subordinates have been completed and information submitted to their HR representative

9. Review Etime records and make certain they are up-to-date

10. Review employee contact information on file (update if necessary)

11. Review outstanding stock based equity awards (if applicable)

I understand that I am responsible for any funds owed 1) on any PolyOne credit cards 2) on any PolyOne loans or in conjunction with any PolyOne Repayment Agreements, 3) for any company property not returned and/or 4) in the event I have voluntarily resigned, any used, unearned vacation. I authorize any unpaid balances or amounts owed to be deducted from any money owed to me by PolyOne.

EMPLOYEE SIGNATURE: _____  DATE: 8/13/14

H.R. SIGNATURE: Melissa Mari  DATE: 8/13/14

*Repayment of $10,000 lump sum due within 30 days (9/15/14). Troy to send check payable to PolyOne to Melissa Mari mm*

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

From: Troy Saunby
Sent: Tuesday, August 05, 2014 11:38 AM
To:
Subject: RE: more           material

I will come visit you when I start with my new company☺ Save you some money!!

Thanks,

Troy A. Saunby
North American Automotive Manager
PolyOne Distribution
Cell-586-242-0018
Fax-586-949-1067
Troy.Saunby@PolyOne.com

From:
Sent: Tuesday, August 05, 2014 12:10 PM
To: Saunby, Troy (ROM);
Cc:
Subject: RE: more           material

What the hell is wrong with all of you..... !!!!
Good luck Brother. I hope your new venture finds you peace and happiness..

I'm leaving          Wait I can't.... Forget it.
Can I get tickets to "One Direction" before you leave? ☺

From: Saunby, Troy (ROM) [mailto:Troy.Saunby@polyone.com]
Sent: Tuesday, August 05, 2014 11:39 AM
To:
Cc:
Subject: RE: more           material

          FYI – I'm leaving PolyOne and my last day is next Friday, August 15th.

Thanks,

Troy A. Saunby
North American Automotive Manager
PolyOne Distribution
Cell-586-242-0018
Fax-586-949-1067

1

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ

Exhibit H

17-04019-mlo    Doc 1    Filed 01/05/17    Entered 01/05/17 11:29:38    Page 54 of 57

Troy.Saunby@PolyOne.com

**From:**
**Sent:** Tuesday, August 05, 2014 6:56 AM
**To:** Saunby, Troy (ROM)
**Cc:**
**Subject:** Fwd: more          material

Need another quote for a
Can you quote natural and black color wasn't specified below

Begin forwarded message:

>    **From:**
>    **Date:** August 4, 2014 at 1:13:32 PM EDT
>    **To:**
>    **Subject:** more          material

>    thanks

This email and any attachment(s) may contain confidential information. If you were not the intended recipient, please notify the PolyOne person who sent you this email and immediately delete the message and any attachments without copying them or disclosing them. Thank you.

To view this disclaimer in other languages: www.polyone.com/disclaimer

**From:** Troy Saunby
**Sent:** Tuesday, August 05, 2014 10:02 AM
**To:**
**Subject:** RE: New Job Opportunity

Congrats on your new position. I'm leaving PolyOne as well – who could I reach out to at          to talk about ABS &
PC/ABS opportunities? I'm going to work for a direct supplier.

My new email address will be troysaunby@lgchem.com

Thanks,

Troy A. Saunby
North American Automotive Manager
PolyOne Distribution
Cell-586-242-0018
Fax-586-949-1067
Troy.Saunby@PolyOne.com

**From:**
**Sent:** Tuesday, August 05, 2014 9:33 AM
**To:**

   Saunby, Troy (ROM);

**Subject:** New Job Opportunity

I just wanted to take an opportunity to let everyone know that I have decided to pursue a job oppo
         I'm not sure when my last day will be          but I would like to thank each
for making my job a pleasure.

1

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ



This email and any attachment(s) may contain confidential information. If you were not the intended recipient, please notify the PolyOne person who sent you this email and immediately delete the message and any attachments without copying them or disclosing them. Thank you.

To view this disclaimer in other languages: www.polyone.com/disclaimer

Electronically Filed 11/04/2014 13:10 / COMPLAINT / CV 14 831892 / Confirmation Nbr. 275789 / CLDLJ